**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VIVIANA R.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 19-cv-07419** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Viviana R. ("Claimant") moves to reverse or remand the final decision of the

Commissioner of Social Security ("Commissioner") denying her claim for disability insurance

benefits ("DIBs").  The Commissioner brings a cross-motion seeking to uphold the decision to

deny benefits.  The parties have consented to the jurisdiction of a United States Magistrate Judge

pursuant to 28 U.S.C. §636(c).  This Court has jurisdiction to hear this matter pursuant to 42

U.S.C. §405(g).  For the reasons that follow, Claimant's motion to reverse the decision of the

Commissioner, (Dckt. #14), is granted and the Commissioner's motion for summary judgment,

(Dckt. #19), is denied.

I.      **BACKGROUND**

A.      **Procedural History**

On December 21, 2016, Claimant (then thirty-five years old) filed a disability application

alleging disability dating back to November 11, 2016, due to colon cancer, premenstrual

dysphoric disorder ("PMDD"), Bell's Palsy, and lumbar nerve root disorder.  (R. 188).

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court
refers to Claimant only by her first name and the first initial of her last name.  Acting Commissioner of
Social Security Kilolo Kijakazi has also been substituted as the named defendant.  Fed.R.Civ.P. 25(d).

Claimant's application was denied initially and upon reconsideration. (R. 15). Claimant filed a timely request for a hearing, which was held on September 19, 2018, before Administrative Law Judge ("ALJ") Karen Sayon. (R. 29-62). Claimant appeared with counsel and offered testimony at the hearing. A vocational expert also offered testimony. On November 29, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-28). Claimant filed a timely request for review with the Appeals Council. The Appeals Council denied Claimant's request for review on September 4, 2019, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

**B.      The Standard for Proof of Disability Under the Social Security Act**

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable

2

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

## C. The Evidence Presented to the ALJ

Claimant seeks disability benefits due to limitations stemming from colon cancer, premenstrual dysphoric disorder ("PMDD"), Bell's Palsy, lumbar nerve root disorder,

3

chemotherapy-induced neuropathy, depression, and back pain. Because the Court's decision relates only to the ALJ's assessment of Claimant's non-physical limitations, it will limit its discussion of the evidence accordingly.

Claimant's primary care doctor, Acezr Sanchez Leynes, M.D., routinely documented Claimant's complaints of lower back pain, which Claimant described as a seven out of ten at worst. (R. 1249). In addition to chronic back pain, Dr. Leynes diagnosed Claimant with recurrent major depressive disorder. (R. 1237). He prescribed Sertraline (Zoloft), which helped alleviate Claimant's symptoms. (R. 721-27, 1237, 1254). In June 2017, Dr. Leynes noted that even though Claimant's depression had worsened after her cancer diagnosis, she was feeling better on medication and her depression was "in partial remission." (R. 1237). He regularly characterized Claimant's depression as in partial remission and "controlled" throughout his records. (R. 1240, 1244, 1247, 1254). In September 2017, Dr. Leynes found that Claimant could be weaned off her depression medication. (R. 1254).

In addition to her medication, Claimant attended counseling to improve her mental health. She testified that the treatment was helpful. (R. 44). Claimant's Licensed Clinical Professional Counselor noted that Claimant's depression was "in remission," and found that Claimant was "able to self-regulate." (R. 1161). At every counseling session, Claimant reported that her "main stressor" was her familial relationships. (R. 1161, 1164, 1166, 1175, 1177, 1185, 1186, 1191). The therapist worked with Claimant to adopt self-care strategies and to recognize cycles of domestic abuse. Claimant testified that counselling and medication help her depression, but she sometimes still feels sad, cries, and wants to lie down and be left alone. (R. 44-45). Because Claimant did not initially cite her depression as an impairment limiting her

ability to work, (R. 188), no state agency consultant reviewed evidence related to her non-exertional impairments, nor did they make findings regarding them.

### D.     The ALJ's decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits.  At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of November 11, 2016.  (R. 17).  At step two, the ALJ determined that Claimant suffered from the severe impairments of colon cancer, neuropathy, and obesity.  (*Id.*).  She further noted that Claimant suffered from the medically determinable mental impairment of depression.  (*Id.*).  The ALJ considered the "paragraph B" factors for mental disorders and found that Claimant had "no more than a mild limitation" in her ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself.  (R. 18).  The ALJ found that Claimant's alleged lower back pain with radiculopathy was not a medically determinable impairment.  (R. 19).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments, including listing 13.18, "cancer of the large intestine," or 11.14, "peripheral neuropathy."  (R. 19).  Before turning to step four, the ALJ determined that Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. §404.1567(b), except that Claimant can never climb ladders, ropes, or scaffolds, must avoid concentrated exposure to extreme temperatures, and can have no concentrated exposure to hazards.  (*Id.*).  At step four, the ALJ determined that Claimant was capable of performing past relevant work as an activities therapist, a receptionist, and an accounts payable clerk.  (R. 22).  As such, the ALJ found that

Claimant was not under a disability from Claimant's alleged onset date through the date of her decision. (R. 22).

## II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul,* 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and

supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

#### A. The ALJ erred by failing to account for the limitations resulting from Claimant's mental impairments when she determined Claimant's RFC.

As detailed above, the ALJ determined that Claimant's depression was a non-severe

impairment and created "no more than a mild limitation" in her ability to: understand, remember,

or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or

manage herself. (R. 18-19). Although the ALJ acknowledged that her step two analysis was

"not a residual functional capacity assessment," and that the "mental residual functional capacity

assessment . . . requires a more detailed assessment by itemizing various functions contained in

the broad categories found in paragraph B," (R. 19), she did not assess the limitations stemming

from Claimant's mental impairment in the RFC assessment, nor did she account for them in her

questions to the VE or in the RFC itself. (R. 19, 54-58).

Claimant argues that the ALJ erred by determining her RFC in this fashion. (Dckt. #25 at

12). Because this argument has merit, the Court finds that a remand to the Social Security

Administration is warranted and it will not address Claimant's remaining arguments. *See*

*DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ

did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do

not address DeCamp's other arguments."); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592,

at *3 (N.D.Ill. Aug. 13, 2019) (declining to address claimant's additional arguments for remand

after finding "that the ALJ did not adequately explain why he did not include any RFC

restrictions to account for [claimant's] mild mental limitations"). The Court's decision in this

regard is not a comment on the merits of Claimant's other arguments and she is free to assert them on remand.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of *all* limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted; emphasis added); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC, even if those mental impairments are non-severe and the limitations that they impose on the claimant's capabilities are minor. *See, e.g., DeCamp*, 916 F.3d at 675-76; *Yurt v. Colvin,* 758 F.3d 850, 857-59 (7th Cir. 2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin,* No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand."). Incorporating such limitations into the RFC is critical because even "mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C.*, 2019 WL 339514,

at *3; *Hovi*, 2013 WL 3989232, at *16.  Furthermore, a claimant's difficulties with memory and

concentration might impact or preclude her ability to perform even unskilled work.  *O'Connor-*

*Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Craft,* 539 F.3d at 677-78).

The Commissioner asserts that the ALJ was not required to address the mild limitations

caused by Claimant's mental impairment in her RFC assessment because the ALJ found that

those limitations did not affect Claimant's ability to work.  (Dckt. #20 at 13).  The Commissioner

cites to the following excerpt of the ALJ's decision to support its argument:

> Because the claimant's medically determinable mental impairment causes no more
> than 'mild' limitation in any of the functional areas, it is nonsevere (20 CFR
> 404.1520a(d)(1).  The limitations identified in the 'paragraph B' criteria are not a
> residual functional capacity assessment but are used to rate the severity of mental
> impairments at steps 2 and 3 of the sequential evaluation process.  The mental
> residual functional capacity assessment used at steps 4 and 5 of the sequential
> evaluation process requires a more detailed assessment by itemizing various
> functions contained in the broad categories found in paragraph B of the adult mental
> disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore,
> the following residual functional capacity assessment reflects the degree of
> limitation I have found in the 'paragraph B' mental function analysis.

(R. 18-19).

The Court disagrees with the Commissioner's position.  The ALJ's statement that her

RFC assessment reflects the degree of limitation that she found in her "paragraph B" mental

function analysis contains a fatal ambiguity that has resulted in remand in many other cases

where ALJs have made similar declarations.  As one court has explained:

> It is unclear what the ALJ meant by saying that the RFC 'reflects' [her] Step 2
> findings concerning [claimant's] mental limitations. [She] could have intended this
> to mean that the RFC was designed to incorporate the mild impairments identified
> at Step 2 even though they were not specifically mentioned in the RFC.  [She] could
> also have meant that [she] considered the Step 2 limitations as part of the RFC
> analysis but found them too mild to warrant additional non-exertional restrictions.

*Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D.Ill. Nov. 18, 2011); *see*

*also Anthony W. v. Kijakazi*, No. C 6209, 2022 WL 1062334, at *3 (N.D.Ill. Apr. 8, 2022)

9

("Courts in this circuit have found such language at the end of the step two analysis causes confusion."). If the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, she was obligated to explain how she did so. *Muzzarelli*, 2011 WL 5873793, at *23; *Anthony W.*, 2022 WL 1062334, at *3 ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. . . . [T]he Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole."). Conversely, if the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion. *Muzzarelli*, 2011 WL 5873793, at *23.

The ALJ's failure to articulate one of these competing explanations leaves the Court unable to follow the basis of her reasoning and, therefore, requires remand so that the ALJ can make her rationale clear. *Id.*, at *23-24; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *4-5 (N.D.Ill. July 14, 2022); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *4-5 (N.D.Ill. July 14, 2022); *Anthony W.*, 2022 WL 1062334, at *3-4; *Judy D.*, 2019 WL 3805592, at *3-5; *Charles B. v. Saul*, No. 18 C 1377, 2019 WL 3557055, at *4-5 (N.D.Ill. Aug. 1, 2019); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *3-4 (N.D.Ill. Mar. 11, 2019); *Jacqueline J. v. Berryhill*, No. 18 C 2401, 2019 WL 339588, at *3-4 (N.D.Ill. Jan. 28, 2019). Accordingly, on remand, the ALJ must either incorporate non-exertional restrictions into the RFC that account for Claimant's mild limitations in the four broad areas of mental functioning, or explain why such limitations are unwarranted.

Furthermore, even if the Court were to read the RFC to include Claimant's mild Step 2 limitations, "remand is still required because the ALJ failed to consider the aggregate impact of all of her severe and non-severe impairments." *Muzzarelli*, 2011 WL 5873793, at *23-24 (citing

*Denton*, 596 F.3d at 423, and *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *David K.*, 2022 WL 2757695, at *4 (same, citing cases); *Jacqueline J.*, 2019 WL 339588, at *4. As SSR-96-8p explains, "a non-severe impairment may not significantly limit a claimant's ability to work when viewed in isolation, but it can 'be critical to the outcome of a claim' when seen together with other limitations." *Muzzarelli*, 2011 WL 5873793, at *23, *quoting* SSR-96-8p.

## CONCLUSION

For the foregoing reason, Claimant's motion to reverse the Commissioner's decision to deny her disability insurance benefits, (Dckt. #14), is granted and the Commissioner's motion for summary judgment, (Dckt. #19), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:   August 12, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**